## BAHAMAS–CUBAN CO., Inc., v. SOUTHERN EXPORT CO.

(Circuit Court of Appeals, Fifth Circuit. April 23, 1924. Rehearing Denied May 28, 1924.)

### No. 4253.

1. **Shipping ⊚⊃45—Charter party containing inconsistent provisions construed against owner.**

    A charter party containing inconsistent provisions, one that the cargo shall be loaded into the vessel, and the other that it shall be received and delivered alongside within reach of the ship's tackles, will be construed against the owner, and the latter provision will govern.

2. **Shipping ⊚⊃175—Charterer liable for demurrage, where delay is caused by character of cargo.**

    If the cause of delay, beyond the charter time, in loading a cargo of lumber, was the character of the cargo, the charterer is liable for demurrage.

3. **Shipping ⊚⊃180—Owner not entitled to demurrage, where ship is incapable of receiving cargo at charter rate.**

    If a ship is incapable of receiving cargo at the rate provided in the charter party without working overtime, the owner is not entitled to demurrage for the delay, but should have employed additional men to assist in loading.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit in admiralty by the Southern Export Company against the Bahamas-Cuban Company, Inc. Decree for libelant, and respondent appeals. Affirmed.

For opinion below, see 293 Fed. 66.

Cromwell Gibbons, of Jacksonville, Fla., for appellant.

Martin H. Long, of Jacksonville, Fla., for appellee.

Before WALKER and BRYAN, Circuit Judges.

BRYAN, Circuit Judge. The appellee chartered from the United States Shipping Board Emergency Fleet Corporation, and then immediately to the appellant, the steamship Diana to carry a cargo of lumber from Jacksonville to Cuba. The freight rate under the original charter was $19, and under the subcharter $21, per 1,000 feet. The vessel was loaded with 1,542,487 feet, but there was a delay of 5½ days, and the agents of the owners notified the appellant that clean bills of lading would not be issued until freight at $19 per 1,000 feet and demurrage amounting to $4,511.76 were paid. The appellant, without consulting or notifying the appellee, paid these amounts under protest. The appellee by its libel in personam seeks to enforce the collection of the difference of $2 per 1,000 feet, amounting to $3,084.-97, between the freight rates of the original charter and the subcharter. The appellant seeks to set off an advance payment of $1,000, which it made by check drawn to the order of the Southern Export Company, and also the amount which it paid for demurrage.

The subcharter was executed on behalf of the appellee by A. P. Gifford, who received the check above mentioned, which he and his partner Hollingsworth, indorsed and collected, but failed to account for the proceeds to the appellant. The evidence is undisputed that Gifford's sole authority from the appellant was to sign the subcharter. Gifford did not testify, but Hollingsworth admitted that they were not acting for the appellee, and testified that on this and several other occasions they adopted the name of the Southern Export Company in transacting their business, which they usually conducted as partners under another misleading name, that of the "Jacksonville Shipping Corporation."

The original charter is on a form designed for the shipment of coal, and requires the cargo to be loaded into the steamer; but it also provides that the cargo be received and delivered alongside within reach of the vessel's tackles. The subcharter is on the regular form for lumber shipments, and it only requires the cargo to be received and delivered alongside within the reach of the vessel's tackles. Both the original and the subcharter require 200,000 feet of lumber to be loaded per day, and provide for demurrage at the rate of 48 cents per day, and no question is raised either as to the delay which occurred or as to the correctness of the amount if demurrage was due. Both charter parties are silent as to the right of any interested party to select the stevedore. In such a case there is a custom at the loading port that the stevedore be named by the party in charge of the wharf at which the cargo is taken. This cargo was taken from the wharf under the control of the so-called Jacksonville Shipping Corporation. The stevedore was paid by the appellant, but the latter was reimbursed by the ship's agent. The lumber was of small dimensions and sizes, and some of it was warped. The stevedore testified that it was impossible without working overtime to load as much as 200,000 feet per day, and

his testimony is corroborated by other stevedores; but it stands admitted that by working overtime the 'cargo could have been loaded within time to save demurrage.

Upon this evidence the District Judge refused to allow either of the items of set-off, and entered a decree for the appellee for the full amount of its claim. We think there is no evidence to support appellant's contention that either Gifford or Hollingsworth were appellant's agent to receive the payment of $1,000. There is no doubt that the appellant took the precaution to protect itself by making its check payable to the appellee from whom it secured the subcharter, and, so far as the evidence shows, Gifford and Hollingsworth wrongfully indorsed the check under the pretext that they were the Southern Export Company. Appellant's remedy does not appear to be against the appellant.

[1-3] We are of opinion that the original charter, as well as the subcharter, only required the cargo to be delivered alongside of the steamer within reach of her tackles, and that the inconsistent provision in the original charter that the cargo should be loaded into the steamer is to be construed against the ship owner. This construction is in accord with the conduct of the parties. The stevedore was not appellee's representative, but was the agent of the appellant, or of the steamship, or was an independent contractor. If the cause of delay was the character of the cargo, then the appellant was liable for demurrage, and is not entitled to a set-off against any one. If the ship was incapable of receiving the cargo at the rate provided without overtime, it was not entitled to demurrage, but should have employed additional men to assist in loading. United States, Owner of Steamship Lake Fairlie, v. Sugarland Industries, 296 Fed. 913 (Fifth Circuit Court of Appeals, opinion filed January 31, 1924). If the delay was attributable to the fault of the stevedore alone, the appellee did not select him, and therefore would not be liable.

In any view of the case, we are of opinion that the decree of the District Court was right, and it is affirmed.